# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DONNY CHAZ HOWELL,  
    Plaintiff,

vs

HAMILTON COUNTY JUSTICE,  
CENTER, et al.,  
    Defendants.

Case No. 1:15-cv-303

Barrett, J.  
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

    Plaintiff, an inmate at the Hamilton County Justice Center (HCJC) in Cincinnati, Ohio, brings this civil rights action under 42 U.S.C. § 1983 against the HCJC and four HCJC correctional officers. (*See* Doc. 1, Complaint). By separate Order, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

    In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or

law. *Neitzke,* 490 U.S. at 328-29; *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a

2

factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

Plaintiff, who is proceeding *pro se*, brings this action against the HCJC and the following correctional officers employed at the HCJC: "Officer Schaefer"; "Sergeant Hunt"; "Lieutenant Buchanan"; and "Lieutenant Kerr." (Doc. 1, Complaint, p. 4, at PAGEID#: 15). The complaint stems from an incident that allegedly occurred at the HCJC on February 14, 2015. (*See id.*, p. 5, at PAGEID#: 16). Plaintiff states that on that date, around 3:25 p.m., when he left his cell "to line up for count time," defendant Schaefer ordered him to immediately return to his cell. (*Id.*). When plaintiff asked why he was "being locked in" and stated that he wanted to speak to "the sergeant" because he had not been issued a disciplinary violation notice, Schaefer responded by telling plaintiff that the sergeant "will not be coming up at this moment"; Schaefer also "resentfully stated 'go in or I'll put you in.'" (*Id.*). Plaintiff did as he was instructed, and told Schaefer that "had it not been for the consequences from [Schaefer's] back up, [he] would spit in [Schaefer's] face." (*Id.*).

Plaintiff further alleges that later that day, around 5:00 p.m., Schaefer and another correctional officer, Officer Bridwell, entered the pod to distribute "food bags" to the inmates.

3

(*Id.*, pp. 5, 7, at PAGEID#: 16, 18). Schaefer told plaintiff to "sit on [his] bunk" and, when plaintiff responded by telling Schaefer he would not spit on him, Schaefer replied that if plaintiff did not sit on his bunk as ordered, "I'm not feeding you." (*Id.*, p. 7, at PAGEID#: 18). Plaintiff alleges that when he did eventually sit on his bunk, the altercation with Schaefer continued as follows:

> Schaefer said "put your back against the wall all the way at the far end of the bed." Still on my bunk, I told Schaefer if he actually felt threatened or thought I would really try to spit on him then he could give my bag to Officer Bridwell whom I had no problems with at all and let him give me the bag. While still seated, I told Schaefer to give the bag to Bridwell and he could even throw my bag into my cell while I remain seated, and if it appeared that I attempted to get up then he could shut my door back. S[ch]aefer rejected my offer and said "nope you refused" and walked away and started feeding other inmates. When Schaefer finished serving the other inmates he walked into the security booth. I pleaded one last time and asked could he please give my bag to my cellmate . . . and he could give it to me when he comes in at lockdown time tonight. [Schaefer] said "you had your chance, you refused." Once it was confirmed that I wouldn't get my food I assured Schaefer that I would be raising this confrontation in a grievance. He simply replied "go for it" and hung up.

(*Id.*, pp. 7-8, at PAGEID#: 18-19).

It appears from exhibits attached to the complaint that defendant Hunt was Schaefer's supervisor who advised Schaefer (1) to "write [plaintiff] up" on disciplinary charges for the earlier incident on February 14, 2015, which ended with plaintiff's threatening to spit at Schaefer, and (2) to order plaintiff during meal distribution later that day "to sit on the back of his bed, while [Schaefer] served him chow, if he wished to receive his food." (*See id.*, pp. 9-10, at PAGEID#: 20-21). Schaefer did file the disciplinary charges, and it appears that defendant Buchanan was the chairman of the Disciplinary Review Board, which recommended that plaintiff be placed in "12 days lock-in" from February 18, 2015 to March 1, 2015 after a hearing held on February 18, 2015. (*See id.*, p. 23, at PAGEID#: 34). Buchanan also was the

4

correctional officer who investigated plaintiff's grievance against Schaefer and responded to the grievance by explaining to plaintiff that "if an inmate refuses to obey staff orders and [is] a threat to staff, it is considered a refusal of chow." (*See id.*, pp. 13-19, at PAGEID#: 24-30). Plaintiff further alleges that on March 27, 2015, Buchanan refused to provide plaintiff with information about his badge number. (*Id.*, pp. 8, 20-21, at PAGEID#: 19, 31-32). Finally, it appears that defendant Kerr denied plaintiff's appeal from the Disciplinary Review Board's decision and approved the recommendation made by the Disciplinary Board on the disciplinary charges lodged against plaintiff by Schaefer on February 14, 2015. (*See id.*, pp. 11-12, at PAGEID#: 22-23).

As relief, plaintiff requests $150,000 in damages from each of the named defendants. (*Id.*, p. 6, at PAGEID#: 17).

Plaintiff's complaint is subject to dismissal at the screening stage for failure to state a claim upon which relief may be granted by this Court. In order to state a viable § 1983 claim, plaintiff must allege facts showing that he was deprived of "a right secured by the United States Constitution or a federal statute by a person who was acting under color of state law." *Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003). Here, plaintiff's factual allegations do not give rise to a plausible claim of federal constitutional dimension against any of the named defendants.

First, plaintiff's complaint against the HCJC is subject to dismissal because the jail is not a "person" or legal entity that can be sued under § 1983. *See Marbry v. Corr. Med. Servs.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (citing *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (per curiam)); *see also Aladimi v. Hamilton Cnty. Justice Ctr.*, No. 1:09cv398, 2012 WL 292587, at *7 (S.D. Ohio Feb. 1, 2012) (Bowman, M.J.) (Report &

5

Recommendation) (holding that the plaintiff had failed to state a claim against the HCJC because "[a] county jail or workhouse is not a 'person' that can be sued under 42 U.S.C. § 1983"), *adopted*, 2012 WL 529585 (S.D. Ohio Feb. 17, 2012) (Barrett, J.). Even if the Court were to liberally construe the complaint as brought against Hamilton County rather than the HCJC, plaintiff has failed to state an actionable claim in the absence of any allegation that his constitutional rights were violated pursuant to a "policy statement, ordinance, regulation or decision officially adopted and promulgated" by the county. *See Aladimi, supra*, 2012 WL 292587, at *7 (quoting *Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), and citing *Petty v. Cnty. of Franklin, Ohio*, 478 F.3d 341, 344 (6th Cir. 2007)).

Second, to the extent plaintiff attempts to bring a claim against defendants Schaefer and Hunt based on the two altercations plaintiff had with Schaefer on February 14, 2015, the complaint's allegations are insufficient to state a viable claim under § 1983.[1] To the extent plaintiff asserts that he was subjected to harsh verbal treatment by Schaefer in those altercations, his claim fails to rise to the level of a deprivation of "a right secured by the United States

---

1 It appears from the face of the complaint, as supported by exhibits, that plaintiff's claim against Hunt is based on Hunt's role as Schaefer's supervisor. Even assuming that plaintiff's claim against Schaefer could survive past the screening stage, which it does not, the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)). To state a plausible § 1983 claim against supervisory defendants, the plaintiff must allege facts showing that they were personally involved or acquiesced in a subordinate's unconstitutional conduct. *See id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Here, according to exhibits attached to the complaint, Hunt merely advised Schaefer that in light of Schaefer's account that he had been threatened by plaintiff in the earlier altercation on February 14, 2015, plaintiff should be ordered during meal distribution later that day "to sit on the back of his bed, while [Schaefer] served him chow, if he wished to receive his food." (*See* Doc. 1, Complaint, pp. 9-10, at PAGEID#: 20-21). The allegation is insufficient to support the inference that Hunt either approved or acquiesced in Schaefer's conduct based on plaintiff's allegations regarding the events that occurred both in the earlier altercation and the meal distribution altercation. Therefore, absent allegations of "specific conduct" by Hunt indicating his "direct, active participation in the alleged misconduct" of Schaefer, plaintiff has failed to state a viable claim for relief against Hunt in his role as Schaefer's supervisor. *See Wingo*, 499 F. App'x at 455. *Cf. Belcher v. Warden, Southern Ohio Corr. Facility,* No. 1:12cv985, 2013 WL 122154, at *2 (S.D. Ohio Jan. 9, 2013) (Litkovitz, M.J.) (Report & Recommendation), *adopted*, 2013 WL 684738 (S.D. Ohio Feb. 25, 2013) (Weber, J.).

Constitution or a federal statute." *See Spadafore*, 330 F.3d at 852. It is well-settled in the Sixth Circuit that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *see also Chilcott v. Erie Cnty. Domestic Relations*, 283 F. App'x 8, 11 (3rd Cir. 2008) (and Sixth, Fifth and Tenth Circuit cases cited therein). *Cf. Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545-46 (6th Cir. 2004) (affirming dismissal of § 1983 complaint against a correctional officer for failure to state a claim even though the complaint contained the following allegations amounting to "shameful and utterly unprofessional behavior" by the correctional officer: the correctional officer continuously banged and kicked plaintiff's cell door, threw the plaintiff's food trays so hard that the top of the tray would fly off, made aggravating and insulting remarks to plaintiff, growled and snarled at plaintiff, smeared the plaintiff's window to prevent him from seeing out of it, behaved in a "racially prejudicial manner" toward the plaintiff and "intentionally harasse[d]" plaintiff "in an attempt to cause him to suffer a heart attack, stroke or nervous breakdown").

Furthermore, to the extent plaintiff claims that he was improperly denied his "food bag" during the final altercation with Schaefer on February 14, 2015, the allegations of the complaint are insufficient to trigger constitutional concerns. The deprivation of a single meal does not rise to the level of an Eighth Amendment violation. *Cf. Richmond v. Settles*, 450 F. App'x 448, 454-56 (6th Cir. 2011) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), and quoting *Ivey*, 832 F.2d at 954) (holding that the deprivation of seven meals during a six-day period did not deprive the plaintiff of "life's necessities" and did "not result in a health risk to

the prisoner sufficient to qualify as a 'wanton infliction of pain'" within the meaning of the Eighth Amendment); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (affirming the district court's dismissal of a claim challenging the furnishing of one meal a day to a prisoner for a 15-day period that "was sufficient to maintain normal health" during that time period); *see also Leonard v. Smoot,* No. 1:13cv97, 2013 WL 1755750, at *3 (S.D. Ohio Mar. 28, 2013) (Bowman, M.J.) (Report & Recommendation) (and cases cited therein) (concluding in recommending the dismissal of the prisoner's complaint at the screening stage that the plaintiff's claim that he was deprived of food for a 19-hour period on weekends did not amount to cruel and unusual punishment under the Eighth Amendment), *adopted*, 2013 WL 1755764 (S.D. Ohio Apr. 24, 2013) (Spiegel, J.); *Ogle v. Thompson*, No. 2:05cv289, 2006 WL 416246, at *3 (W.D. Mich. Feb. 17, 2006) (ruling that the plaintiff's claim that he was "improperly denied his food tray" on a single occasion was subject to dismissal on screening because "the denial of a meal on one occasion does not rise to the level of an Eighth Amendment violation").

In addition, it appears from the face of the complaint that on the day in question, after plaintiff had earlier questioned and only reluctantly complied with several of Schaefer's direct orders in a confrontation that ended with plaintiff telling Schaefer that he wanted to spit in Schaefer's face, plaintiff's meal was withheld only after plaintiff questioned and refused to comply with Schaefer's order to sit with his back against the wall at the far end of his bed before his food would be given to him. Prison officials are accorded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hudson v.*

8

*McMillan*, 503 U.S. 1, 6 (1992) (holding that the "core judicial inquiry" for determining whether or not the use of force by prison staff violates the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"). Plaintiff had no right to negotiate with or question Schaefer about the orders that were given, and Schaefer "was not required to wait and see if [plaintiff] would have a change of heart." *See Jennings v. Peiffer*, 110 F. App'x 643, 645-46 (6th Cir. 2004). "Inmates cannot be permitted to decide which orders they will obey, and when they will obey them." *Id.* at 645 (quoting *Caldwell v. Moore*, 968 F.2d 595, 601 (6th Cir. 1992), in turn quoting *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)); *see also Ogle, supra*, 2006 WL 416246, at *3. In this case, when viewed in the light most favorable to the plaintiff, the complaint's allegations do not even remotely suggest that plaintiff's meal was withheld for malicious or sadistic reasons, but rather that the action was taken as "a good-faith effort" to maintain order and discipline within the institutional setting. *Cf. Jennings*, 110 F. App'x at 645-46 (holding that "[e]ven when viewed in the light most favorable" to the plaintiff, the facts indicated that as a matter of law correctional officers did not act maliciously or sadistically in using chemical agents on the plaintiff, but rather resorted to that action in a "good-faith effort to maintain or restore discipline," where the plaintiff admitted he questioned an officer's order to hand over his shoes and the "act of defiance was not a singular occurrence, but a continuation of his ongoing obstreperous behavior beginning hours earlier"); *Ogle, supra*, 2006 WL 416246, at *3-4 (dismissing excessive use of force claim on initial screening of the complaint because the plaintiff was sprayed with a chemical agent only after he failed to comply with correctional officers' directives to remove paper covering his cell window).

Third, plaintiff has failed to state a viable claim under § 1983 against defendants Schaefer, Hunt, Buchanan or Kerr for their roles in the disciplinary proceedings initiated against plaintiff based on the February 14, 2015 incident, which resulted in plaintiff's placement in "lock-in" for 12 days.  Any claim by plaintiff that his 12-day confinement in "lock-in" in and of itself constitutes cruel and unusual punishment under the Eighth Amendment is meritless.  *See, e.g., Harden-Bey v. Rutter,* 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Murray v. Unknown Evert,* 84 F. App'x 553, 556 (6th Cir. 2003)) ("Because placement in segregation is a routine discomfort that is part of the penalty that criminal offenders pay for the offenses against society, it is insufficient to support an Eighth Amendment Claim.").

Moreover, to the extent that plaintiff claims that his right to due process was violated by the defendants' actions in the disciplinary proceedings, he fails to state a claim for relief under the Fourteenth Amendment because the challenged disciplinary action did not amount to a deprivation of a constitutionally protected liberty interest.  In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that the Fourteenth Amendment confers on prisoners only a "limited" liberty interest "to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or which "will inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Williams v. Wilkinson,* 51 F. App'x 553, 556 (6th Cir. 2002).  The Sixth Circuit has held that confinement in segregation generally does not rise to the level of an "atypical and significant" hardship implicating a liberty interest except in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to an *indefinite* administrative segregation" or that such confinement was excessively long in duration.  *Joseph v.*

*Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)) (emphasis in original); *see also Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (holding that the prisoner's 8-year confinement in segregation was of "atypical duration" and thus "created a liberty interest that triggered his right to due process"). *Cf. Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates).

  Here, plaintiff has not alleged that the challenged disciplinary sanction resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any necessities of life. Plaintiff's "12-day lock-in" confinement was not so lengthy in duration as to rise to the level of an atypical and significant hardship. *Cf. Jones*, 155 F.3d at 812 (holding that an inmate's administrative segregation for two and a half years while his participation in a prison riot was being investigated did not amount to an atypical and significant hardship); *Mackey v. Dyke*, 111 F.3d 460, 461, 463 (6th Cir. 1997) (117-day delay in releasing the plaintiff from administrative segregation to the general prison population did not impose an atypical or significant hardship on the plaintiff and thus did not trigger due process concerns); *Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *7 (6th Cir. Aug. 23, 2000) (and numerous cases cited therein in support of holding that placement for 14 months in administrative segregation did not impose an atypical or significant hardship on the prisoner); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug. 11, 1999) (30 days in Security Control, 14 days in Disciplinary Control and six to eight months in Administrative Control did not constitute an

"atypical hardship" under *Sandin*). Accordingly, because plaintiff does not have a protected liberty interest under the circumstances alleged herein, his complaint against the individual named defendants for their role in the disciplinary proceedings does not state a claim under the Fourteenth Amendment's Due Process Clause.

Finally, plaintiff has failed to state a claim against defendant Buchanan to the extent plaintiff additionally seeks to challenge Buchanan's handling of plaintiff's grievance against Schaefer and Buchanan's refusal to provide information about his badge number to plaintiff. Plaintiff has not alleged any facts even remotely suggesting that he was deprived of a federal constitutional or statutory right by Buchanan's refusal to provide information about his badge number. Furthermore, plaintiff's complaint about the handling of his grievance against Schaefer fails to state a cognizable claim for relief under § 1983. Such a claim does not implicate federal constitutional concerns because plaintiff has no right under the Constitution to an effective prison grievance procedure. *See, e.g., Hill v. Warden, Southern Ohio Corr. Facility,* No. 1:12cv63, 2012 WL 1639991, at *2 (S.D. Ohio Mar. 13, 2012) (Litkovitz, M.J.) (Report & Recommendation) (recommending dismissal of portion of complaint complaining about "the failure of prison staff to provide [plaintiff] with inmate grievance forms and other deficiencies in the inmate grievance procedure" because "plaintiff has no federal constitutional right to an effective prison grievance procedure"), *adopted*, 2012 WL 1623565 (S.D. Ohio May 9, 2012) (Weber, J.); *Dearing v. Mahalma,* No. 1:11cv204, 2011 WL 3739029, at *7 (S.D. Ohio Aug. 24, 2011) (Barrett, J.) (holding that the plaintiff's allegations referring to "his dissatisfaction with the . . . investigation of [an] allegedly mishandled letter" through the prison grievance process did not state an actionable claim under 42 U.S.C. § 1983); *Williams v.*

12

*Harris,* No. 1:11cv362, 2011 WL 3667438, at *3 (S.D. Ohio June 15, 2011) (Litkovitz, M.J.) (Report & Recommendation) (recommending dismissal of complaint against prison official responsible for responding to institutional grievances because the plaintiff had "no constitutional right to an effective grievance procedure"), *adopted*, 2011 WL 3667389 (S.D. Ohio Aug. 22, 2011) (Dlott, J.); *see also Walker v. Michigan Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005) (per curiam) (and cases cited therein); *Argue v. Hofmeyer,* 80 F. App'x 427, 430 (6th Cir. 2003) (and cases cited therein); *Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000).

Accordingly, in sum, the complaint should be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) because plaintiff has failed to state a claim upon which relief may be granted against any of the named defendants.

## IT IS THEREFORE RECOMMENDED THAT:

1. The plaintiff's complaint (Doc. 1, Complaint) be **DISMISSED** with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore deny plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date:   5/19/15                                       /s/*Karen L. Litkovitz*
                                                              Karen L. Litkovitz
                                                              United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DONNY CHAZ HOWELL,  Case No. 1:15-cv-303
    Plaintiff,

                                Barrett, J.
vs                                Litkovitz, M.J.

HAMILTON COUNTY JUSTICE
CENTER, et al.,
    Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc